UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAVID McCLEBB | CIVIL ACTION |
| VERSUS | NO. 11-3047 |
| LT./ASST. WARDEN JESSICA BORDELON ET AL. | SECTION "C" (2) |

## REPORT AND RECOMMENDATION

Plaintiff, David McClebb, is a prisoner currently incarcerated in the Orleans Parish Prison system ("OPP). He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against three officers employed at the Lafourche Parish Detention Center, where he was previously incarcerated for a little more than two months. McClebb alleges that while incarcerated in Lafourche from October 7 to December 12, 2011, defendants Jessica Bordelon, Cortrell Davis and Renee Brinkley discriminated against him because he is a homosexual. He seeks injunctive relief and monetary compensation. Record Doc. No. 2 (Complaint at ¶ V).

On February 9, 2012, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Mike Jimenez, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

McClebb testified that he is currently incarcerated in OPP as a pretrial detainee awaiting trial on a criminal charge of monetary instrument abuse. He stated that he was transferred to OPP from the Lafourche Parish Detention Center after about two months of incarceration in Lafourche from October 7 to December 12, 2011. McClebb confirmed that his claim in this case is that he was denied certain privileges that were permitted to other inmates in the Lafourche facility because he is a homosexual. He clarified that his claims case arise exclusively from events that occurred in the Lafourche Parish Detention Center, <u>not</u> in OPP.

McClebb testified that he was incarcerated for about two months in the Lafourche facility in a cell by himself without contact with other inmates and without being permitted to leave the cell for any reason, except to shower alone. He said he was denied outdoors recreation and other exercise opportunities and had no television set in his cell. He said he was fed through the door of his cell. In addition, he said that he was denied participation in drug and alcohol abuse prevention and rehabilitation programs, GED classes and "basically anything to get me out of my cell, anything that I wanted to do involving getting me out of my cell."

Plaintiff testified that the three defendants told him he was being confined in this fashion "for my safety and protection, but . . . I've been arrested in other facilities and

I never was segregated the way I was" in Lafourche. He said he explained to the defendants that there were other parts of the jail where he could be kept.

McClebb complained that during his two months in Lafourche he was alone in his cell with only a telephone, and that he was denied use of the telephone by a cover installed on it by guards for an eight-hour period during one day, until his complaints resulted in removal of the cover so he could use the phone again.

McClebb testified that the defendants told him they were concerned that he might be attacked or abused by other inmates, "but they had other [homosexual] inmates that actually came through that system that were actually placed in the other blocks with other inmates." Plaintiff testified that during his incarceration at other facilities he had been provided with the same yard, exercise and other privileges as other inmates and that he had never been the victim of any sexual attack or abuse at any jail where he had been incarcerated.

He acknowledged that, from the perspective of defendants, his housing classification was an attempt to protect him, while from his own perspective it was unnecessary, and defendants were simply discriminating against him by denying him privileges because of his homosexuality. "They had other places where they could have housed me," he said. "They could have installed a TV, . . . but they didn't install a TV for me." He testified that he was denied these privileges that were being given to other

inmates even though he had no disciplinary "write-ups" or violations while he was in Lafourche. He said he complained about his treatment in written grievances filed in the prison administrative remedy procedure.

Asked if he suffered any physical injuries or health problems as a result of the conditions of his confinement or the denial of these privileges, McClebb said, "No – more as mental. . . . depression, . . . it was horrible. I didn't have an inmate to talk to, no one to see." He complained that sometimes a small window into his cell would be closed so that other inmates passing outside his cell could not see him. He described the conditions as a threat to his sanity.

On cross-examination, McClebb denied that when he was booked he told the intake officer at Lafourche that he had been raped in OPP by a staff member. He conceded that he told the Lafourche intake officer that he had once attempted suicide while incarcerated in OPP and that he had suffered an injury to his elbow, but not that he lacked use of his hand. McClebb admitted that he is a registered sex offender "because of the charge of crime against nature which is a felony prostitution." He denied that he identified himself as a post-operative transvestite. "When I went to Lafourche Parish, I had [long] hair . . . The thing of it was they [jail officials] thought I had a vagina . . . because I look like a girl." He said he told jail officials that he still had a penis.

**ANALYSIS**

I.    STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir.

1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder,

105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[1]

## II. EQUAL PROTECTION

Plaintiff testified that he was denied certain privileges provided to other inmates at the Lafourche facility because of his homosexuality. Construed broadly, these allegations appear to assert that plaintiff's equal protection rights were violated.

It is well established that

"a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." Rather, as long as they do

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

not burden a fundamental right or target a suspect class, state agencies may pursue legitimate purposes by any means having a conceivable rational relationship to those purposes.

Johnson v. Rodriguez, 110 F.3d 299, 306 (5th Cir. 1997) (quoting Dandridge v. Williams, 397 U.S. 471, 485 (1970)) (additional quotation omitted) (emphasis added); accord Sonnier v. Quarterman, 476 F.3d 349, 368 (5th Cir. 2007).

Plaintiff's equal protection claim regarding the alleged preferential treatment of other inmates fails to state a claim cognizable under Section 1983 for several reasons. First, his testimony establishes that no fundamental right was burdened by defendants' failure to provide him with the same housing, recreation or educational privileges offered to other inmates. "The Supreme [C]ourt has explained that fundamental rights, for equal protection purposes, are such rights as: a right of a uniquely private nature [such as the right to procreate], the right to vote, right of interstate travel and rights guaranteed by the First Amendment." Id. at 368 n.16 (citing Mass. Bd. of Retirement v. Murgia, 427 U.S. 307, 312 n.3 (1976)).

No such fundamental right was burdened in this case. The privileges about which plaintiff complains are housing and eating with other inmates, outdoors and other exercise, an eight-hour interruption of telephone service, television viewing and access to self-improvement programs. As noted at pages 15-17 infra, the Supreme Court and other courts have pointed out in the separate but constitutionally analogous context of

due process that none of these privileges rises to the level of a fundamental right for purposes of constitutional analysis. Thus, McClebb's claim in this case does not implicate any fundamental right, and he cannot establish this essential element of an equal protection claim.

Second, McClebb does not allege that he is a member of a suspect class. "A suspect class, as used in . . . equal protection analysis, is one saddled with such disabilities, or subjected to a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process. Examples of suspect classes are those based upon race, ancestry, or religion." Id. at n.17 (citations omitted); see also City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985) (heightened equal protection scrutiny applies only to classifications based on race, alienage, national origin, gender and illegitimacy).

McClebb alleges that he was discriminated against because of his homosexuality. "Neither the Supreme Court nor this court [the Fifth Circuit] has recognized sexual orientation as a suspect classification [or protected group]; nevertheless, a state violates the Equal Protection Clause if it disadvantages homosexuals for reasons lacking any rational relationship to legitimate governmental aims." Johnson v. Johnson, 385 F.3d 503, 532 (5th Cir. 2004); James v. Hertzog, 415 Fed. Appx. 530, 2011 WL 817533 (5th

Cir. 2011); Ward v. Lee, 2011 WL 4381947, *3, adopted, 2011 WL 4381896 (W.D. La. 9/20/11).

Thus, to withstand equal protection review, government classifications that distinguish between persons who are not members of a suspect class and other persons need only be "rationally related to achieving a legitimate government interest. The actual reason for a state action is irrelevant for claims reviewed under rational-basis scrutiny and will be upheld if 'any state of facts reasonably may be conceived to justify [the State's discrimination].'" Newman Marchive P'ship, Inc. v. Hightower, 349 F. App'x 963, 965 (5th Cir. 2009) (quoting McGowan v. Maryland, 366 U.S. 420, 426 (1961)) (citing Delahoussaye v. City of New Iberia, 937 F.2d 144, 149 (5th Cir. 1991)).

In this case, McClebb acknowledged in his testimony that he is a homosexual who had long hair and looked like a girl when he was booked into the Lafourche facility. He acknowledged that defendants said they kept him separated from the other inmates for his own safety and protection because they feared – based upon his homosexuality and feminine appearance – that he might be sexually assaulted by other prisoners. "Legitimate governmental aims include 'preservation of order and prevention of violence in prison' and protection of 'homosexual prisoners from abuse at the hands of their fellow inmates.'" Ward, 2011 WL 4381896, *3 quoting Hall v. Morehouse Parish Det. Ctr., 2009 WL 3762084, at *1, 4 (W.D. La. 2009); see James, 2011 WL 817533, at *1

(upholding preclusion of homosexual inmate from work release program when it "served the rational and legitimate penological reason of maintaining security and order in the prison"). Thus, although McClebb disagreed with defendants' assessment of the risk presented to his own safety, their housing and security-related decisions concerning McClebb did not constitute equal protection violations under these circumstances.

Third, as discussed above, McClebb's own testimony established that he cannot sufficiently establish that he was intentionally discriminated against because of his homosexuality.

> [D]isparate impact alone cannot suffice to state an Equal Protection violation; otherwise, <u>any</u> law could be challenged on Equal Protection grounds by whomever it has negatively impacted. Thus, a party who wishes to make out an Equal Protection claim must prove "the existence of <u>purposeful</u> <u>discrimination</u>" motivating the state action which caused the complained-of injury. "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group."

Johnson, 110 F.3d at 306-07 (citing Washington v. Davis, 426 U.S. 229, 246-250 (1976)) (quoting McCleskey v. Kemp, 481 U.S. 279, 292-93 (1987) (emphasis added); Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995); Brennan v. Stewart, 834 F.2d 1248, 1257 (5th Cir. 1988)) (emphasis in original).

Mere separate classification "does not of itself deprive a group of equal protection of the law." Sonnier, 476 F.3d at 369 (citing Carrington v. Rash, 380 U.S. 89, 92

(1965)). McClebb merely speculates that his housing with other inmates would not have exposed him to sexual assault. However, defendants' concerns for his safety and protection were clearly legitimate, nondiscriminatory reasons, <u>not</u> intentional discrimination, sufficient to justify their actions concerning his housing for the short, two-month duration of his stay in Lafourche that form a rational basis for their actions. A rational basis is all that is required to withstand equal protection review in these circumstances.

Thus, McClebb's "discrimination" claim in this case fails to state a claim cognizable under Section 1983. The denial of privileges about which he complains neither burdened a fundamental right nor targeted a suspect class. His testimony establishes that prison officials' decisions concerning his housing were not intentionally discriminatory or constitutionally prohibited. Thus, his equal protection claim is based on a meritless legal theory and should be dismissed as legally frivolous.

### III.  CLASSIFICATION / DUE PROCESS

To whatever extent, if any, that McClebb alleges a due process violation resulting from his housing in Lafourche, he fails to state a cognizable Section 1983 claim. In <u>Jones v. Diamond</u>, 636 F.2d 1364, 1374 (5th Cir. 1981),[2] the en banc Fifth Circuit stated

---

[2] <u>Overruled on other grounds by</u> <u>Int'l Woodworkers v. Champion Int'l Corp.</u>, 790 F.2d 1174 (5th Cir. 1986), <u>aff'd sub. nom. Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437 (1987).

that "pretrial detainees have a due process right to be considered individually to the extent security and space requirements permit." Significantly, however, the classification of inmates is an administrative function of the prison. Id. at 1376. Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. Bell, 441 U.S. at 547-48; Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990). "Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Woods v. Edwards, 51 F.3d 577, 582 (5th Cir. 1995) (citing Hewitt v. Helms, 459 U.S. 460, 469-70 (1983)); Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt, 459 U.S. at 472). "Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law." Woods, 51 F.3d at 581-82 (quotation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner,

532 U.S. 732, 735 (2001); accord Jones v. Roach, 196 F. App'x 287, 288 (5th Cir. 2006); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003).

The Fifth Circuit's decision in Jones v. Diamond provides that pretrial detainees have a right to be considered individually only to the extent that security and other requirements permit, and that imposition of greater security measures may be warranted under an inmate's particular circumstances. Jones, 636 F.2d. at 1374. Considering the individualized circumstances of McClebb's case, as described in his testimony, it cannot be concluded that housing McClebb apart from other inmates was unconstitutional.

McClebb's subjective belief that he should have been housed with other inmates is unsupported and insufficient for the court to conclude that prison officials' discretionary decisions concerning housing him separately and restricting his contact with other detainees for security reasons were unconstitutional. The circumstances described in McClebb's own testimony do not establish the objective unreasonableness of this particular housing decision. In this instance, housing McClebb apart from other inmates cannot be characterized as arbitrary or indiscriminate or as an abuse of the discretion the law assigns to prison officials, with which this court should not interfere. No violation of McClebb's due process or other constitutional rights occurred under these circumstances.

In Sandin v. Connor, 515 U.S. 472, 481-83 (1995), the United States Supreme Court held that analysis of a prisoner's due process claim relating to his denial of prison privileges begins with determining whether a constitutionally protected liberty interest exists. "Liberty interests protected by the Fourteenth Amendment may arise from two sources–the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460, 466 (1983). In Sandin, the Supreme Court recognized that, although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (citations omitted).

Examples of prison hardships that would qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his underlying criminal conviction. Sandin, 515 U.S. at 484.

In the instant case, McClebb's testimony and his written submissions establish that his loss of privileges included exclusion from participation in educational or self-help programs, outdoor recreation, placement in the general prison population, and television. None of these actions constitute such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that his due process rights could be found to have been violated. Sandin, 515 U.S. at 484; see Johnson v. Livingston, 360 F.

15

App'x 531, 532 (5th Cir. 2010) (citing Malchi v. Thaler, 211 F.3d 953, 958 (5th Cir. 2000)) ("Loss of privileges and cell restriction do not implicate due process concerns."), petition for cert. filed, (U.S. May 8, 2010) (No. 09-10742); Hernandez, 522 F.3d at 563 (holding that non-disciplinary "confinement to a shared cell for twelve months with permission to leave only for showers, medical appointments and family visits . . . is by no means an atypical prison experience"); Dixon, 117 F. App'x at 372 ("loss of commissary privileges, cell restriction, placement in administrative segregation, and extended work schedule were not atypical punishments requiring due process protections"); Payne v. Dretke, 80 F. App'x 314, 314 (5th Cir. 2003) ("commissary and recreation restrictions [as disciplinary punishment] . . . do not implicate a liberty interest under the Due Process Clause").

Inmates have no protected liberty interest in specific educational, rehabilitative or self-improvement opportunities. Lato v. Attorney Gen., 773 F. Supp. 973, 978 (W.D. Tex. 1991). "[A] state has no constitutional obligation to provide basic educational or vocational training to prisoners." Beck v. Lynaugh, 842 F.2d 757, 762 (5th Cir. 1988) (citing Newman v. Alabama, 559 F.2d 283, 292 (5th Cir. 1977), rev'd in part on other grounds sub nom. Alabama v. Pugh, 438 U.S. 781 (1978)); accord Miles v. Windham Sch. Dist., 78 F. App'x 418, 419 (5th Cir. 2003); Honshul v. Foti, 51 F.3d 1045, 1995 WL 153425, at *2 (5th Cir. 1995). In addition, inmates have no protected liberty interest

in specific recreational opportunities and the "[d]eprivation of exercise is not a per se constitutional violation." Lewis v. Smith, 277 F.3d 1373, 2001 WL 1485821, at *1 (5th Cir. 2001) (citing Stewart v. Winter, 669 F.2d 328, 336 n.19 (5th Cir. 1982); Miller v. Carson, 563 F.2d 741, 751 n.12 (5th Cir. 1977)); accord Sampson v. Corrections Corp., No. 08-CV-0915, 2009 WL 837640, at *16 (W.D. La. Mar. 26, 2009) (Drell, J.) (citing Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir. 1991); Beck v. Lynaugh, 842 F.2d 757, 762 (5th Cir. 1988); Lato v. Attorney Gen., 773 F. Supp. 973, 978 (W.D. Tex. 1991)).

Thus, no cognizable claim of violation of due process rights cognizable under Section 1983 can be stated as to the matters about which plaintiff complains in this case.

IV. NO PHYSICAL INJURY

McClebb's written complaint sought injunctive relief in the form of an order requiring defendants "to comply with my complaint by giving me all rights and privileges entitled to me as other inmates receive." Record Doc. No. 2 (Complaint at ¶ V). This portion of his request for injunctive relief has been mooted, however, by his transfer to OPP from Lafourche after only two months of incarceration.

Thus, the only remaining part of his claim for relief is his request "to be monetarily compensated." Id. This claim is deficient under Section 1983 because McClebb fails to allege "physical injury" sufficient to support his claim for monetary damages. Specifically, the Prison Litigation Reform Act of 1996 includes the following

17

requirement in 42 U.S.C. § 1997e(e): "<u>No</u> Federal civil action <u>may be brought</u> by a prisoner confined in a jail, prison, or other correctional facility, <u>for mental or emotional injury</u> while in custody without a prior showing of physical injury." (Emphasis added). McClebb does not allege physical injuries of any kind as a result of defendants' alleged actions in this case.

The Fifth Circuit has consistently enforced the statutory physical injury requirement for prisoners who seek compensatory damages for intangible emotional or psychological harm, such as has been alleged by McClebb in this case. <u>Hutchins v. McDaniels</u>, 512 F.3d 193, 196 (5th Cir. 2007); <u>Geiger v. Jowers</u>, 404 F.3d 371, 374-75 (5th Cir. 2005); <u>Herman v. Holiday</u>, 238 F.3d 660, 665 (5th Cir. 2001). The Fifth Circuit has explained that "[t]he 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'" <u>Alexander v. Tippah County</u>, 351 F.3d 626, 631 (5th Cir. 2003) (citing <u>Harper v. Showers</u>, 174 F.3d 716, 719 (5th Cir. 1999) (quoting <u>Siglar</u>, 112 F.3d at 193); <u>accord</u> <u>Mayes v. Travis State Jail</u>, No. 07-51086, 2008 WL 4657078, at *1 (5th Cir. Oct. 22, 2008). Thus, in <u>Alexander</u>, the court found that "[Section] 1997e(e) precludes [plaintiffs] from recovering for their emotional and mental injuries" when the only physical injuries they suffered were nausea and one incident of vomiting. <u>Id.</u> Similarly, in <u>Siglar</u>, the court held that a prisoner's ear that was sore and bruised for three days was merely a de minimis injury. <u>Siglar</u>, 112 F.3d at 193.

In this case, McClebb admittedly suffered <u>no</u> physical injuries of any kind as a result of defendants' actions. As Section 1997e(e) provides and Fifth Circuit case law makes clear, he is precluded as a matter of law from recovering damages for the psychological or other emotional injury he has asserted.

Furthermore, although Section 1997e(e) allows recovery of punitive and/or nominal damages in an appropriate case, <u>Hutchins</u>, 512 F.3d at 197-98, McClebb has not shown any constitutional violation that would entitle him to even nominal damages, "[n]or has [plaintiff] shown the 'evil intent' or 'callous indifference' required to obtain punitive damages." <u>Allen v. Stalder</u>, 201 Fed. Appx. 276, 2006 WL 2852925, at *1 (5th Cir. 2006) (citing <u>Williams v. Kaufman County</u>, 352 F.3d 994, 1015 (5th Cir. 2003)). Thus, plaintiff's complaint must be dismissed in this regard.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this ___29th___ day of February, 2012.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.